148

In the Matter of the Claim of PATRICK KEANE et al., Respondents. BETHLEHEM STEEL COMPANY (SHIPBUILDING DIVISION), Appellant; ISADOR LUBIN, as Industrial Commissioner, Respondent.

Third Department, July 9, 1956.

*Bruce Bromley, John H. Morse* and *Donald Cronson* for appellant.

*Jacob K. Javits, Attorney-General,* for Industrial Commissioner, respondent.

*Herman A. Gray* for claimants-respondents and Industrial Union of Marine & Shipbuilding Workers of America, CIO.

GIBSON, J. Claimants' employment in the employer's ship repair yards was under the terms of a union contract expiring June 23, 1954. The union gave 60 days' prior notice of intent to terminate the contract and to renegotiate as of that expiration date. Negotiations at two meetings held prior to that time were unsuccessful. On June 23 the union advised the employer, in writing, that no strike would be called prior to July 23 or, in any event, without 15 days' prior notice. On July 7 the union served notice of its intention to call on its members to strike on July 23 and by votes taken at subsequent meetings of local unions the union negotiating committee was authorized to call a strike. Such action was, however, subject to final authorization by the president or executive board of the international union, which was not given or, so far as appears, applied for. On July 23, the union issued to its members leaflets stating that work, as well as negotiations, would continue on a day-to-day basis, the employer and employees continuing to observe the terms of the expired contract and no strike to occur until the general executive board should be convinced that there would be no usefulness in continuing negotiations. On September 18 the negotiating teams reached an agreement which was subsequently ratified. Work and negotiations alike did proceed during all the period in question, peacefully and without incident except that on two occasions certain shifts left work early, on the first occasion to vote on the proposal to authorize a strike and, later, to vote on the proposed new contract.

During the period, the employer laid off workers in substantial numbers and has offered proof claimed to substantiate its contention that such layoffs were necessitated by a shortage of work which was, in turn, due to its, as well as its prospective customers', apprehension as to delays in performance which would ensue upon a strike. As early as June 9 the employer began to advise prospective customers as to what it termed the strike threat and to solicit work which could be completed quickly or without penalty by way of demurrage, if delayed.

The claims of the employees-respondents are contested by the employer on the ground that their unemployment was caused

by an industrial controversy within the meaning of subdivision 1 of section 592 of the Labor Law which suspends benefit rights for seven weeks from the day after loss of employment " because of a strike, lockout, or other industrial controversy ". The Unemployment Insurance Appeal Board has found that neither occurred. In our view, there was substantial evidence supporting that determination. That being so, we need not pass on the board's finding against the employer on the issue of causal relationship.

As against the proof of the union's notice of intention to seek a strike vote and the locals' subsequent authorization conferred upon the negotiating committee, but neither acted upon by the committee nor ratified by the international union, the board was entitled to weigh the evidence that the available work continued without any significant interruption or other incident and that the contract negotiations proceeded peacefully and to a successful conclusion. Upon thus weighing the proof, the board was entitled to find, as it did, that no strike, lockout or other industrial controversy existed. In affirming that basic finding, we do not adopt the unnecessary expressions of opinion which followed it in the referee's decision, which the board adopted, characterizing the collective bargaining negotiations as " the antithesis of a strike, lockout or other industrial controversy ", nor do we approve the further and again unnecessary conclusion that the initial denial of benefits to workers laid off by reason of the employer's anticipation of a strike was unjustified because no strike eventuated. We are satisfied from our reading of the board's decision that its findings were based upon the entire record and are amply sustained by it.

In our view, the board properly applied the principle expressed in *Matter of Cohen (Corsi)* (283 App. Div. 143). There the employer properly elected to negotiate a new working arrangement, as the employees did here. There, as here, employees were laid off while negotiations proceeded peacefully until a new contract was concluded. " This ", we said (*supra,* pp. 144–145), " is not what the Legislature meant by ' strike, lockout or other industrial controversy ' which, read together, must open to the construction that the ' other industrial controversy ' intended was something in the nature of a strike or lockout. The purpose of the statute as Presiding Justice FOSTER observed in *Matter of Burger (Corsi)* (277 App. Div. 234, 236) [affd. 303 N. Y. 654] is that the State is to step aside for a time, pending the settlement of the differences between employer and employee ' to avoid the imputation that a strike may be financed

through unemployment insurance benefits.' " In this case reasons at least equally strong forbade the application of pressure by denial of benefits while bargaining was carried on peacefully and in good faith and without act or incident found, upon the factual situation as a whole, to have been in the nature of a strike or lockout.

Our holding in *Matter of Vingoe (Bethlehem Steel Co.)* (285 App. Div. 160) is in no way inconsistent with that in the *Cohen* case (*supra*) or with the board's determination here. There, negotiations had failed, a strike was called and temporarily deferred only by reason of an executive order issued by the President of the United States and employees had commenced the " ' orderly shutdown ' " (*supra,* p. 162) vital to the preservation of equipment and constituting a definite phase of the strike process. The appeal to this court was from a board determination adverse to the claimants and we found that substantial evidence supported it.

The appellant employer relies in large measure on *Unemployment Comm. v. Aragon* (329 U. S. 143) and on *Mortensen* v. *Board of Review* (121 A. 2d 539 [N. J.]). Both involved statutes, comparable to that of New York, governing unemployment benefits, the words " labor dispute " (329 U. S. 149, *supra*) rather than " industrial controversy " appearing in the foreign statutes, a difference which we deem immaterial to a proper analysis of the cases. In each, unlike the present case, the appellate court was presented with a determination by the fact-finding administrative agency adverse to the employees-claimants. In discussing the administrative body's application of the term " labor dispute " in the *Aragon* case (*supra,* pp. 153–154) the court said, " All that is needed to support the Commission's interpretation is that it has ' warrant in the record ' and a ' reasonable basis in law ' ". In the *Mortensen* case (*supra,* p. 541), the court said, " The Appellate Division concluded that ' substantial evidence was presented at the hearings from which both of the findings were justified and we discern no reason for a full *de novo* excursion into that field.' 37 N. J. Super. at page 241 * * * Our own examination of the record satisfies us that this conclusion was right."

Regardless of the distinctions noted, however, we find the *Aragon* case (*supra*), on its facts, inapplicable here and the holding in the *Mortensen* case does not persuade us to a like determination of this. In the *Aragon* case, decided prior to our decision of the *Cohen* case (283 App. Div. 143, *supra*) and involving seasonal employment, the employers terminated their

labor contracts prior to the opening of the season and invited negotiations, during which "serious disagreement appeared which quickly developed into an impasse on the question of wages" (329 U. S. 146–147, *supra.*) The employers fixed deadlines which were not met, with the result that no work was performed. That factual situation presents, to our minds, little analogy to that which existed in this case.

The *Mortensen* case (*supra*) involved the impact upon this employer's New Jersey yard of the contract termination and negotiations here involved. As appears from the Appellate Division opinion (37 N. J. Super. 236, 240) "[u]nrest" existed and "some sporadic, improper incidents" occurred which had no counterparts in the New York yards, but, passing these differences and those others which have been noted, we are unable in any event to give weight to the opinion of the New Jersey Supreme Court, relying, as it in large measure does, upon the *Aragon* decision (*supra*) which we have held inapplicable here.

Adhering, as we do, to the principle and the incidental definition stated in the *Cohen* case (*supra*), we refrain from an extended discussion of appellant's contention that the term "other industrial controversy" is synonymous with "labor dispute", as used in other State and Federal enactments, with the effect, in appellant's view, of broadening the application of the former. In particular, appellant would apply to "other industrial controversy" the definition specifically applied by paragraph (c) of subdivision 10 of section 876-a of the Civil Practice Act to the term "labor dispute" appearing elsewhere in that section, relating to injunctions issued in labor disputes. It seems clear that the definition prescribed by a statute for words used in that particular statute does not necessarily govern the construction of those same words, to say nothing of words merely similar, as they may appear in other acts, and, in fact, the reasons necessitating such a definition in a particular instance may sometimes militate against the general application of that definition. Nevertheless we do not consider the resolution of this semantic controversy necessary to a proper analysis of the authorities above reviewed or to our determination of the issues. Dealing with a similar contention raised in the *Aragon* case (*supra,* pp. 150–151) the court said, "We need not determine whether 'labor dispute' must in all cases be construed as broadly as it is defined in the Norris-LaGuardia Act and the National Labor Relations Act".

Our affirmance renders academic the procedural question raised by respondents with respect to the initial determination.

The decision should be affirmed, with costs to respondents-claimants against the appellant.

BERGAN, J. P., COON, HALPERN and ZELLER, JJ., concur.

Decision affirmed, with costs to the claimants-respondents against the appellant.